**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

DEVON L. CHAMBERS,
an individual,

Case No.:

Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION,

Defendant.
_________________________________/

**COMPLAINT**

**COMES NOW**, Plaintiff, DEVON L. CHAMBERS (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendant, U.S. DEPARTMENT OF EDUCATION (hereinafter, "Defendant" or "ED"). In support thereof, Plaintiff states:

**PRELIMINARY STATEMENT**

1. This is an action for damages for ED's violations of the FCRA wherein ED continued to incorrectly report Plaintiff as the individual associated with—and responsible for—repayment of a Pell Grant Overpayment on an ED account after Plaintiff disputed and advised that she did not attend the 2-year California college associated with the Pell Grant, and in fact had never had any government education assistance whatsoever.

**JURISDICTION, VENUE & PARTIES**

2. Subject matter jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as the FCRA, 15 United States Code Section 1681, *et seq*.

3. Defendant is subject to the personal jurisdiction of this Court, and the general jurisdiction of the courts of Missouri, because it regularly transacts business in this District and the State of Missouri.

4. Venue is proper in this District as Defendant is subject to this Court's personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1)(A).

5. At all material times herein, Plaintiff is a natural person, residing in St. Louis County, Missouri at the time the Account (as defined *infra*) is believed to have been originated.

6. At all material times herein, ED is a department of the government of the United States of America with its principal place of business located at 400 Maryland Avenue SW, Washington, D.C., 20202.

**FCRA STATUTORY STRUCTURE**

7. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

8. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible*

*accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

9. Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

10. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

11. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

12. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting

agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

13. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

14. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

**<u>GENERAL ALLEGATIONS</u>**

15. At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

16. At all material times herein, ED, itself and through its subsidiaries, regularly evaluates students for educational loan and grant eligibility, opens accounts

for student loans and Pell Grants to be distributed, and maintains such accounts for payment and collection.

17. At all material times herein, ED is a "person" who—itself and though its subsidiaries, agents, or affiliates including but not limited to "Maximus Federal Services, Inc."—furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

18. At all material times herein, ED reports information concerning an account number beginning in 6320-, ending in -5025, associated with an alleged Pell Grant overpayment for attendance at Chaffey Community College, a 2-year college in the State of California (hereinafter, the "Alleged Debt" or the "Account").

19. At all material times herein, Equifax Information Services LLC (hereinafter, "Equifax") and TransUnion LLC (hereinafter, "Trans Union") are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

20. At all material times herein, Defendant acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

21. All necessary conditions precedent to the filing of this action occurred, or Defendant has waived or excused the same.

## FACTUAL ALLEGATIONS

*The Pell Grant Program*

22. A Pell Grant is a United States Government subsidy, administered by ED, that may be awarded to undergraduate students who display exceptional financial need. *See* 34 C.F.R. § 690.10.

23. Pell Grants are issued for undergraduate degrees only. *See Id.* at § 690.6(a).

24. Pell Grants are issued for *first* undergraduate degrees only. *See Id.*

25. An overpayment (also called an over-award) exists where a Pell Grant is determined to have exceeded that the sum the recipient student was eligible to receive.

26. While Pell Grants do not need to be repaid, Pell Overpayments must be repaid by the recipient student to ED. *See* 34 C.F.R. § 690.79(a)(1).

*Plaintiff's Educational History*

27. Plaintiff attended the University of Colorado Boulder from September 2013 through January 2016.

28. Plaintiff attended the University of Arizona from September 2016 through May 2018.

29. Plaintiff graduated from the University of Arizona with a bachelor's degree in May 2018.

30. Plaintiff's University of Arizona degree was/is Plaintiff's first and only undergraduate baccalaureate degree.

31. Plaintiff has never attended college in the State of California.

32. Plaintiff has never lived in the State of California.

33. Plaintiff has never attended a 2-year college.

34. Plaintiff's college education was paid in full to the Universities of Arizona and Colorado, without any form of financial assistance from ED.

35. Plaintiff has never applied for, or received, any student loan.

36. Plaintiff has never applied for any Pell Grant at any time.

37. Plaintiff was never, during the periods she attended the Universities of Arizona and Colorado, financially eligible to receive a Pell Grant.

38. Plaintiff was categorically ineligible for any Pell Grant consideration or award after she earned her first undergraduate degree in May 2018.

39. Plaintiff never authorized any person or institution to apply for a Pell Grant in her name, or in the name of any other person, by use of her personal identifying information.

40. Plaintiff never received the benefit of any Pell Grant, or the specific funds underlying the Account, at any time.

41. Plaintiff has never received any Pell Grant either directly or paid to an educational institution on her behalf, at any time.

42. Plaintiff has never been liable for any Pell Overpayment at any time.

*ED's Reporting of the Account to Equifax and Trans Union*

43. Chaffey Community College is a public, 2-year community college located in Rancho Cucamonga, California.

44. Plaintiff never attended Chaffey Community College.

45. In approximately November 2023, upon reviewing her credit reports, Plaintiff noticed ED was reporting the Account on her Equifax and Trans Union reports despite it not being hers, despite Plaintiff never receiving any Pell Grant, and despite Plaintiff never opening the Account.

46. More specifically, Plaintiff discovered that the Account was reported by ED to Equifax and Trans Union as opened on or about June 20, 2023, related to a "STUDENT LOAN" and "PELL OVERPAYMENT," and bearing a balance at or about $3,516.00.

47. The appearance of the ED Account on Plaintiff's Equifax and Trans Union credit reports falsely indicated that that Plaintiff: was: (1) indebted in the amount of approximately $3,500.00; (2) making no payments or arrangements to satisfy the debt owed.

48. Each of the aforementioned facts materially impacted Plaintiff's creditworthiness by negatively altering her debt load and debt-to-credit ratio, and by indicating that Plaintiff was, for all intents and purposes, wholly ignoring her alleged obligation to repay the $3,500.00 student debt.

49. Upon research and communication directly with ED, Plaintiff learned that the Account was associated with a Pell Overpayment for attendance at Chaffey Community College in California.

50. The Account's reported "open" date also post-dated the award of Plaintiff's first and only undergraduate degree by over five (5) years.

51. Plaintiff did not open a student loan or receive any Pell Grant associated

with the Account.

52. Plaintiff was not, and is not, properly associated with the Account or any of the Account's data.

53. Upon information and belief, Plaintiff's personal information was—unbeknownst to her—utilized by a "Pell Runner," a person or group that engaged in a pattern of fraud that is known to target California community colleges specifically and has, since 2021, resulted in more "more than $5 million" dollars in fraud.[1]

54. "Pell Runner" scams have been well known to ED for over a decade.[2]

*Plaintiff's First Disputes*

55. On or about November 6, 2023, Plaintiff submitted disputes to Equifax and Trans Union concerning ED's reporting of the Account, advising that the Account was not properly associated with her because she did not receive any Pell Grant and did not attend Chaffey Community College (hereinafter "First Dispute").

56. Plaintiff's First Dispute disputed the alleged balance owed, stated that the Account was not hers, and advised that the Account should never have existed and must therefore be deleted.

57. Equifax and Trans Union received Plaintiff's First Dispute.

58. In relation to the First Dispute, Equifax sent ED an Automated Credit

---

[1] Adam Echelman, *California Community Colleges are Losing Millison to Financial Aid Frau*d, April 1, 2024, ABC10.com, https://www.abc10.com/article/news/local/california/calmatters/california-community-colleges-losing-millions-financial-aid-fraud/103-cf9804ee-4fc2-4b74-90be-32b57f943b65, accessed November 5, 2024;

[2] Kelly Field, *Education Department Chases Pell Runners who Threaten Aid Program*, August 28, 2011, The Chronicle of Higher Education, https://www.chronicle.com/article/education-department-chases-pell-runners-who-threaten-aid-program/, Accessed November 5, 2024.

Dispute Verification request (ACDV) that properly communicated the First Dispute to ED and correctly and sufficiently summarized the dispute as, "claims true identity fraud- account fraudulently opened."

59. Equifax's First Dispute ACDV to ED also noted that Plaintiff was only properly associated with addresses in St. Louis, Missouri and Denver, Colorado.

60. In relation to the First Dispute, Trans Union sent ED an Automated Credit Dispute Verification request (ACDV) that properly communicated the First Dispute to ED and correctly and sufficiently summarized the dispute as, "consumer say *(sic)* that this account is open fraudulently *(sic)* consumer wanted to remove this account from credit report" and "claims true identity fraud, account fraudulently opened […] [p]rovide or confirm complete ID."

61. Trans Union's First Dispute ACDV to ED also noted that Plaintiff was only properly associated with addresses in Colorado.

62. On or about November 16, 2023, ED responded to Equifax's ACDV and verified that the Account was being reported correctly on Plaintiff's Equifax report as associated with Plaintiff.

63. In its November 16, 2023 ACDV response to Equifax, ED also told Equifax that Plaintiff was properly associated with an address at 5525 Shirely Lane, Montclair, CA 91763.

64. On or about November 20, 2023, ED responded to Trans Union's ACDV and verified that the Account was being reported correctly on Plaintiff's Trans Union report as associated with Plaintiff.

65. If ED had conducted a reasonable investigation, it would have deleted the Account.

66. ED's failure to conduct a reasonable investigation into Plaintiff's First Dispute was unreasonable given the information provided in Plaintiff's First Dispute, ED's extensive knowledge concerning Pell Grant scams/fraud, ED's ability to access educational information of Plaintiff, ED's ability to access educational information from the subject community college, among other investigatory means at ED's disposal.

67. ED continued reporting the Account as associated with Plaintiff and bearing a balance of over $3,000.00 after receiving Plaintiff's First Dispute.

*Plaintiff's Second Dispute*

68. On or about December 6, 2023, Plaintiff submitted a second dispute to Trans Union concerning ED's reporting of the Account, advising that the Account was not properly associated with her because she did not receive any Pell Grant and did not attend Chaffey Community College (hereinafter "Second Dispute").

69. Plaintiff's Second Dispute disputed the alleged balance owed, stated that the Account was not hers, and advised that the Account should never have existed and must therefore be deleted.

70. Trans Union received Plaintiff's Second Dispute.

71. In relation to the Second Dispute, Trans Union sent ED an Automated Credit Dispute Verification request (ACDV) that properly communicated the First Dispute to ED and correctly and sufficiently summarized the dispute as, "claims rude

identity fraud, account fraudulently opened […] [p]rovide or confirm complete ID."

72. The Trans Union's Second Dispute ACDV to ED also included a separate "consumer message" that stated, "This account is fraudulent Please investigate and remove from my credit report."

73. Trans Union's First Dispute ACDV to ED also noted that Plaintiff was only properly associated with addresses in Colorado.

74. On or about December 15, 2023, ED responded to Trans Union's ACDV and verified that the Account was being reported correctly on Plaintiff's Trans Union report as associated with Plaintiff.

75. If ED had conducted a reasonable investigation, it would have deleted the Account.

76. ED's failure to conduct a reasonable investigation into Plaintiff's Second Dispute was unreasonable given the information provided in Plaintiff's Second Dispute, ED's extensive knowledge concerning Pell Grant scams/fraud, ED's ability to access educational information of Plaintiff, ED's ability to access educational information from the subject community college, among other investigatory means at ED's disposal.

77. ED continued reporting the Account as associated with Plaintiff and bearing a balance of over $3,000.00 after receiving Plaintiff's Second Dispute.

**DAMAGES**

78. As a result of Defendant's unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied

credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event could obtain financing.

79. Overall, Plaintiff suffered damage to her credit reputation as a result of Defendant's conduct.

80. Defendant's FCRA violations alleged herein resulted in its failure to delete the ED Account.

81. Defendant's continued false reporting of the ED Account on Plaintiff's credit reports materially impacted Plaintiff's creditworthiness by negatively altering her debt load and debt-to-credit ratio, and by indicating that Plaintiff was ignoring her alleged obligation to repay the $3,500.00 student debt.

82. Plaintiff retained Swift Law PLLC and The Elster Law Office LLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

83. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

84. As a result of Defendant's conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed he would not be able to obtain favorable credit terms as a result of Defendant's false and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires,

and she was continually evaluated for credit using consumer reports that falsely reported the Account as associated with Plaintiff and bearing a balance.

85. Additionally, as a result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite reporting the inaccurate information on his Account in a timely manner and performing his obligations under such agreements, Plaintiff must simply endure Defendants' unlawful reporting of the Account.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s2(b)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

86. ED is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax and Trans Union correct the Account on Plaintiff's credit reports and credit file after investigating Plaintiff's repeated disputes.

87. As described above, Plaintiff never lived in the State of California, never attended a 2-year college, never attended college in the State of California, never applied for or received any manner of ED assistance whatsoever, never received any student loans whatsoever, never received any Pell Grant at any time, never authorized

anyone to apply for a Pell Grant in her name or by use of her personal information, and was categorically ineligible for any Pell Grant consideration after she earned her first undergraduate degree in May 2018.

88. Despite Plaintiff never being properly associated with the Account, upon receipt of all Plaintiff disputes—which were properly conveyed by Equifax and Trans Union to Defendant—Defendant did not conduct any investigations of the account in good faith.

89. Defendant did not conduct any investigations reasonably, particularly given the level of data and information available to ED including but not limited to the information provided by Plaintiff, educational history information, and ED's own knowledge concerning Pell Grant scams.

90. Defendant's investigations were not conducted using all information reasonably available to ED.

91. During the course of its investigations, Defendant did not contact Plaintiff or Chaffey Community College. Defendant did not review the alleged Pell Grant application for suspicious and/or inconsistent information, inclusive of demographic/PII information. Defendant did not consider Plaintiff's residences in relation to the location of the education institution allegedly attended.

92. Following each of Defendant's disputes, Defendant incorrectly and falsely confirmed and/or verified its inaccurate reporting to Equifax and Trans Union showing that the Account existed, was properly associated with Plaintiff, and bore a balance due and owing.

93. Defendant's refusal to request that Equifax and Trans Union correct the tradeline associated with the Account was intentionally, willfully, and knowingly done as Defendant clearly possessed knowledge of the inaccurate information on the Account as reported by Plaintiff.

94. As a result of Defendant's conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed he would not be able to obtain favorable credit terms as a result of Defendant's false and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that falsely reported the Account as associated with Plaintiff and bearing a balance.

95. Additionally, as a result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite reporting the inaccurate information on his Account in a timely manner and performing his obligations under such agreements, Plaintiff must simply endure Defendants' unlawful reporting of the Account.

96. Defendant's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

97. Defendant's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n

or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

    a.    Judgment against Defendant for maximum statutory damages for violations of the FCRA;

    b.    Actual damages in an amount to be determined at trial;

    c.    Compensatory damages in an amount to be determined at trial;

    d.    Punitive damages in an amount to be determined at trial;

    e.    An award of attorney's fees and costs; and

    f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

                                Respectfully submitted,

                                **SWIFT LAW PLLC**

                                */s/ Jordan T. Isringhaus*
                                Jordan T. Isringhaus, Esq., 91487FL
                                11300 4th St. N., Ste. 260
                                St. Petersburg, FL 33716
                                Phone: (727) 490-9919

Fax: (727) 255-5332
jisringhaus@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*